IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ASHLEY D. MOORE,<br><br>    Plaintiff,<br><br><br><br><br><br>vs.<br><br><br>JO ANNE B. BARNHART, Commissioner<br>of the Social Security Administration,<br><br>    Defendant. | MEMORANDUM DECISION AND<br>ORDER DENYING PLAINTIFF'S<br>MOTION TO REVERSE OR<br>REMAND THE COMMISSIONER'S<br>ADMINISTRATIVE DECISION AND<br>AFFIRMING COMMISSIONER<br><br><br><br><br><br>Case No. 2:06-CV-618 TS |

Plaintiff Ashley Moore (Moore) seeks judicial review of the determination of the

Commissioner of Social Security denying her application for Social Security disability

insurance benefits.

The twenty-year old Moore contends that she became disabled in 2002 due to

injuries sustained in an automobile accident.  Her application date was April 7, 2003.  The

ALJ found, and Moore does not disagree, that she has been employed since March 2005.

Therefore, this appeal only involves a question of the alleged period of disability from her

April 2003 application date to March 2005.   Moore contends that she was disabled during

this period due to right knee and leg pain and swelling as well as depression and anxiety. Her basic argument is that she was disabled during the period, but was able to return to work after knee surgery improved her condition.

The ALJ found that Moore had right knee pain secondary to synovial chondromatosis post motor vehicle accident and arthroscopic surgery, somatoform disorder, and affective disorder that are considered severe impairments.   However, the ALJ also found that those medically determinable impairments do not meet or equal any of the listed impairments.  In making this determination, the ALJ determined that Moore's allegations regarding her limitations are not totally credible.  The ALJ also gave "limited" weight to the opinion of her treating physician—Dr. Thomas.   Instead, the ALJ credited other evidence in the record and found that, before she returned to work, she retained the residual functional capacity to perform substantially all of the requirements of light work that involved "simple and repetitive" tasks and did not require climbing.  Considering the range of unskilled sedentary occupations that she retained the residual functional capacity (RFC) to perform, the ALJ found that "there were jobs, existing in significant numbers in the national economy [that she] was able to perform before she returned to work." Accordingly, he found that she was not disabled as defined in the Social Security Act at any time through the date of his decision.

Moore contends that the ALJ erred by (1) improperly rejecting the opinions of her doctors and other medical sources; (2) improperly rejecting the testimony of Moore and her mother; and (3) failing to meet the burden at step five.

2

The Court's review of the ALJ's decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1]  If supported by substantial evidence, the findings are conclusive and must be affirmed.[2]  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]  The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4]

The Court should evaluate the record as a whole, including any evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

The well-known five step sequential evaluation process to determine whether a claimant is disabled is as follows:

> At step one, the claimant must show that [she] is not presently engaged in substantial gainful activity; at step two that [she] has a medically severe impairment or combination of impairments; at step three that the impairment is equivalent to a listed impairment; and, at step four, that the impairment or combination of impairments prevents [her] from performing his past work. If the claimant successfully meets [her] burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity . . .  to perform work in the national economy,

---

[1]*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2]*Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[3]*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th  Cir. 1996).

[4]*Id*.

[5]*Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

given [her] age, education, and work experience.[7]

"While a claimant's credibility is generally an issue reserved to the ALJ, the issue is reviewable to ensure that the underlying factual findings are 'closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"[8]

Having reviewed the entire record under this standard,  the Court turns to Moore's claims of error.  Moore first contends that the ALJ failed to provide specific legitimate reasons for rejecting the opinions of her treating physician and examining sources.  She specifically contends that the ALJ failed to include in the assessment limitations the following impairments that she argues her treating physician identified: Difficultly bearing weight on one leg and the need to elevate her leg; an observation that she had problems with concentration, persistence and pace; and a finding by a mental health provider that she had a GAF[9]  score of 42.

Examining the record, the Court finds that Dr. Thomas was one of Moore's treating physicians.  Filling out a check-in-the-box-type form for RFC, he indicated that, during the period of claimed disability, she could "never" lift or carry even five pounds, or bend, squat, climb, or reach.[10]  He indicated she could only sit continuously for four hours during a work

---

[7]*Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations and quotations omitted).

[8]*Swanson v. Barnhart,* 2006 WL 2147557, *1 (10th Cir. 2006) (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)).

[9]A Global Assessment of Function or GAF, is a "subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Langley v. Barnhart,* 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).

[10]Rec. at 339.

day and could only stand or walk a total of two hours in a work day.  He also marked that she could put in only two to three hours of work-related activity in a typical work day–all as the result of knee pain.[11]

"Under the 'treating physician rule,' the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not."[12]  In a sequential analysis, if the ALJ determines that the treating physician's opinion is either not well-support or is not consistent with other substantial evidence in the record, then it is not entitled to controlling weight.[13]

> Under the regulations, the agency rulings, and [controlling] case law, an ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion. Further, the notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[14]

Unless it is entirely rejected, an opinion that is not given controlling weight should still be entitled to deference and weighed using factors set forth in the Social Security regulations.[15]  However, an ALJ may also reject the opinion completely, but "he must then give 'specific, legitimate reasons' for doing so."[16]

---

[11]*Id.* at 341.

[12]*Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

[13]*Id.*

[14]*Id.* (quoting SSR 96-2p) (other quotations and citations omitted).

[15]*Id.* at 1300-01 (listing factors).

[16]*Id.* at 1301 (quoting *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (additional quotation omitted).

In this case, the Court finds that the ALJ articulated the weight he gave the treating physician's opinion—"limited weight and essentially rejected the treating physician's opinion, but that he set forth, in detail, his reasons for doing so.  The reasons for rejecting the opinion were that it was "extremely restrictive," and that the "medical signs and findings" and Moore's own complaints failed to support such restrictions.[17]  The ALJ discussed in detail the medical findings and listed inconsistencies in the medical records,[18] including the inconsistency that the treating physician had elsewhere in her records described Moore's condition as "essentially asymptomatic" during the claimed disability period.[19]

The ALJ applied the correct standards and the Court finds that substantial evidence in the record supports the ALJ's decision to reject the treating physician's RFC.

Moore also contends that the ALJ failed to include limitations from Dr. English that Moore had to elevate her leg and was unable to put much weight on her right leg.  Dr. English did not opine that these were limitations.  Instead, he notes that Moore reported that her leg would swell and that she elevated her leg "a couple times" a day.[20]  Dr. English went on to state that his examination showed "only" a half-centimeter discrepancy in the

---

[17]Rec. at 19.

[18]*Id.* at 17-19.

[19]*Id.* at 19, 342 (describing her as essentially asymptomatic during three examinations during the time period at issue).

[20]*Id.* at 187-88.

circumference of her legs, and "certainly no gross swelling."[21]  There is no evidence that Dr. English found that needing to elevate Moore's leg "a couple" of times a day is a limitation that could not be done after or before work, or would affect her ability to work. Dr. English did note that Moore was "unable to put very much weight on the right leg compared to the left," but also noted that "she is not using an ambulation assistance device, however."[22]  He also noted that, after the treatment, "she was able to almost totally normalize her gait."  Significantly, this was on May 23, 2003.  The ALJ cited the record of the examination on July 17, 2003, where another doctor noted that Moore walked with a normal gait.[23]   The ALJ also noted that his review of Moore's records failed to find any medically prescribed wheelchair or other assistive device to ambulate.[24]

As to the finding by one mental health provider that Moore had a GAF score of 42, there is also a GAF score of 55 assessed by Dr. Nielson.[25]

> A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect, or "moderate difficulty in social or occupational functioning."  A GAF score of 41-50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.[26]

---

[21]*Id.*

[22]*Id.* at 205.

[23]*Id.* at 165.

[24]*Id.* at 17.

[25]*Id.* at 160.

[26]*Langley*, 373 F.3d at 1123 n.3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.2000) at 32 and 34).

The ALJ also discussed and accepted Dr. Nielson's observation that she had problems with concentration, persistence and pace, noted other, more favorable evidence in the record, and found that Moore's medical records showed that she would have been able, at a minimum, to perform simple and repetitive tasks.[27]

The Court finds that the ALJ's discussion of the mental health records, and his findings that Moore was limited by her mental impairments but would have been able to perform simple and repetitive tasks, was well within the findings of a GAF score of 55[28] and the other evidence cited and, therefore, is supported by substantial evidence.

Moore next contends that the ALJ improperly rejected the testimony of Moore and of her mother.  The ALJ made very specific findings on Moore's credibility and found that her allegations regarding her limitations were not credible.[29]  In so doing, he summarized evidence in her medical records of inconsistencies, such as use of a wheelchair when one was never prescribed and when, days after doing so, another doctor reported her walking with a normal gait.[30]  He also noted a doctor's comments that she exhibited "poor effort during psychological testing" and "extreme degree of emotional symptom over-reporting,"[31]

---

[27]Rec. at 19.

[28]Compare 20 C.F.R. § 404.1568(a) (skill requirements for unskilled work) with (b) (skill requirements for semi-skilled work as including jobs that may require alertness and attention to various tasks or activities and as including jobs where hands or feet must be moved quickly to do repetitive tasks).

[29]Rec. at 19, 21.

[30]Id. at 17.

[31]Rec. at 18.

and that her condition soon improved.[32]  He also found that her records indicated that some treatment was "partially motivated by [her] attempting to qualify for Social Security benefits."[33]

The Court finds that the credibility assessments are supported by substantial evidence.  It was not error for the ALJ to not specifically discuss Moore's mother's reports of extreme anxiety that kept her confined to the house.  Moore's mother did not testify at the hearing before the ALJ.[34]  The mother's statements in the medical records are basically the same as already reported by Moore and summarized by the ALJ.[35]   As discussed above, the ALJ already had noted the inconsistencies between Moore's subjective statements[36] regarding her condition and other evidence in the record and found her not to be credible.  The Court finds that where the ALJ had already made such a detailed credibility determination and where the statements of her mother are duplicative or cumulative of her own statements there was no need for the ALJ to separately address the

---

[32]*Id.*

[33]*Id.* at 18 citing *Id.* at 213 (noting that Moore's mother reported she had been denied social security and opining that "this client is more than likely interested in reapplying for Social Security based on her treatment" with that provider).

[34]Rec. at 429-47.

[35]*E.g.* Rec. at 17(noting that among other things, Moore's complaints of anxiety and doctor's diagnoses of dependent personality traits and situational stressors); *Id.* at 17-18 (noting Moore reported being fearful of leaving her home and riding in cars); *Id*. (noting Moore reported extreme fear of cars and "some" agoraphobia).

[36]Moore also testified at the hearing that she was afraid to leave home from the time of her accident until sometime after February 2004. Rec. at 441-43. Moore's mother did not testify at the hearing before the ALJ. *Id.* at 429-47.

credibility of her mother's statements.  The Court further finds that the ALJ's findings as to credibility were "closely and affirmatively linked to substantial evidence" and, therefore, a "formalistic factor-by-factor recitation of the evidence"[37] was not necessary as her mother's statements, would have been repetitive and cumulative.[38]

Moore's last challenge to the ALJ's decision is that the ALJ erred because he did not obtain evidence from a vocational expert at step five regarding Moore's limitations.

The Court has reviewed the parties' arguments on this issue and finds that where Moore's non-exertional limitations did not preclude unskilled work, the ALJ provided sufficient evidence that jobs existed which she could perform, given the ALJ's determination of her RFC.

Based upon the foregoing, the Court finds that the ALJ applied the correct standards and that his Decision is fully supported by the record.  It is therefore

ORDERED that Plaintiff's Motion to Reverse or Remand the Commissioner's Administrative Decision is DENIED.  It is further

---

[37]*Ledford v. Barnhart,*  197 Fed.Appx. 808, 812, (10th Cir. 2006) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) and *Qualls*, 206 F.3d at 1372.

[38]*See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (declining "to adopt a rule requiring an ALJ to make specific written findings as to each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony.").

ORDERED that the Commissioner's Decision denying Plaintiff Ashley Moore's application for Social Security disability benefits is AFFIRMED.

The clerk of court is directed to close this case.

DATED  January 29, 2007.

BY THE COURT:

_____

TED STEWART
United States District Judge